UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
DARREN GUNTER,                                    :

                    Petitioner,          :

        -against-                   :        **REPORT AND RECOMMENDATION**

SUPERINTENDENT WILLIAM A. LEE,   :        12 Civ. 8331 (RA)(KNF)

              Respondent.    :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE VALERIE E. CAPRONI, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Darren Gunter ("Gunter"), proceeding pro se, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for second-degree murder and his sentence of twenty years to life imprisonment.  Gunter makes the same claims in the petition as he made on direct appeal: (1) his statements to law enforcement officers should have been suppressed because no reasonable basis existed on which the police could have seized him in order to interrogate him, and the statements were not attenuated from this unlawful conduct; (2) the verdict was against the weight of the evidence because the credible evidence at trial established an affirmative defense to felony murder, namely, that Gunter could not have reasonably known that the other perpetrators were armed and intended to kill or seriously injure the victim; (3) he was deprived of a fair trial, based on prosecutorial misconduct in summation, as the prosecutor made inflammatory comments, "argued outside the four corners of the evidence," asked the jury to reach conclusions not fairly inferred from the evidence, lowered the burden of proof and asked the jury to reach speculative conclusions; and (4) his sentence should

be reduced, based on his background and minimal involvement in the crime.  The respondent opposes the petition.

## BACKGROUND

On November 16, 2004, Marilyn Samuels ("Samuels") lived in the top apartment of a two-story family residence at 1611 Hammersly Avenue, Bronx County, with her sons, thirteen-year-old Khari Samuels ("Khari") and nineteen-year-old Levi Bernard ("Levi").  In the afternoon of that day, Khari went to the front door and saw a woman outside yelling at Levi; she called Levi a liar as he shook his head to indicate "no."  The woman left the area briefly, then returned, became enraged and ripped up the outside garbage.  Khari told the woman to collect the garbage, but she began yelling at him; she threatened to vandalize his mother's car and left.  Levi met with police officers after the incident.

Later, a woman started calling the family's telephone number repeatedly.  Her voice matched that of the woman who tore up the garbage.  During the sequence of telephone calls, the woman told Khari repeatedly, "I know who you are . . . [Y']all think this is a game.  I want my money."  Samuels picked up the telephone and heard Khari tell the caller, "you're scaring me, now I'm going to hang up the phone."  When the telephone rang again, Samuels answered.  The caller stated that she had been in Samuels's home earlier and had sex with her son.  She then stated that Samuels needed to explain the meaning of the word "no" to him.  The caller told Samuels that she was going to come to the residence with her two brothers and the police, she did not "want to play," and she was "coming for what's hers."

Around 10:02 p.m., Levi called 911.  He informed the operator that he needed immediate emergency assistance because "they're at my door."  When the operator asked Levi who was at his door, Levi stated, "a female."  Soon after, Levi abandoned the telephone but did not hang it

up.  The audio from the telephone call was recorded by emergency services personnel.  During this time, Samuels had been watching the evening news on the television in her bedroom.  About one minute into the program, Samuels heard the sound of glass shattering.  She left her bedroom immediately and saw Levi backing into Khari's bedroom holding a broomstick.  A five-foot seven-inch tall male wearing a black hat and hood approached, armed with a gun.  Another man, who was over six-feet tall, was behind the gunman.  The gunman stated to Samuels: "back the fuck up, bitch," and fired a shot.  Khari heard, from his bedroom, the shattering glass, gunshots and voices, including the voice that said "back the fuck up, bitch."  As he opened his bedroom door, Khari saw glass "flying all over" and his brother holding a broomstick and retreating into his bedroom.  Levi attempted to close the bedroom door.  Samuels went back into her bedroom and called 911, as more shots were fired and someone pounded on the bedroom door.  Khari fled the apartment through his bedroom window.

After the intruders left the apartment, police officers entered and observed that the glass in the front french door was shattered and the wood frame and deadbolt lock were broken. Samuels left her bedroom when she heard the police officers, and she saw Levi's body on the floor in Khari's room, his head resting on the doorstep.  Levi had been shot.  One bullet entered his chest, perforated his heart, traveled though his abdomen, perforated his liver and pancreas and exited his body, killing him.  A second bullet, a .38 caliber copper-jacketed bullet, entered Levi's left thigh, near the hip, traveled through his leg and fractured his femur before lodging near his groin.  A subsequent police investigation uncovered ballistics evidence from two guns, a 9mm and a .38 caliber firearm.

On April 27, 2005, Detective Michael DePaolis ("DePaolis") took over the investigation. On that day, he spoke with Latisha Lindsay ("Lindsay"), also known as "Lovely."  The

following day, the detective went to 1485 Grand Concourse, Bronx County, where he

apprehended Terry Bazemore ("Bazemore") and recovered a full box of fifty live Winchester

9mm ammunition rounds.  On April 29, 2005, Lindsay informed DePaolis that Gunter was

involved in the November 2004 homicide.  DePaolis prepared a "wanted card" for Gunter, which

he attempted to send out by facsimile.  A prosecutor in the Bronx County District Attorney's

complaint room noticed the wanted card and approached DePaolis, informing him that he had

just drafted a criminal complaint against Gunter on marijuana charges for which Gunter was in

custody at Bronx County Central Booking.

DePaolis went to Central Booking, found Gunter, took him to a secured interview room

and read him Miranda warnings.  Gunter indicated he understood his rights, did not invoke his

right to counsel and agreed to answer questions.  Thereafter, DePaolis interviewed Gunter for

approximately one-half hour regarding Levi's shooting.  Gunter informed DePaolis that he had

received a telephone call from Lindsay, who told him that she had been raped.  Thereafter,

Gunter, Roy Gray ("Gray") and Bazemore went with Lindsay to a man's house.  Once there, the

group spent fifteen minutes planning how to enter the house.  Gray kicked in the front door,

Gunter kicked in the glass of the second door and the group entered the house.  Lindsay pointed

out a man, who ran to a back bedroom and Gray pursued him.  Gunter heard a gun shot, and

Bazemore went into the bedroom.  Gunter heard three more shots fired, and saw Bazemore

running out with a gun.  He and Bazemore fled the house together, as Lindsay and Gray made

their escape separately.  Gunter asked Bazemore what happened and Bazemore answered that he

"hit him" three times, shooting the man in the house once in his testicles and twice in his chest.

Shortly thereafter, an assistant district attorney conducted a videotaped interview with

Gunter, during which DePaolis and the video technician were present.  DePaolis did not speak to

4

Gunter about the facts of the case between the time he concluded his interview and the beginning of the videotaped interview. Gunter stated that, on November 16, 2004, he was with Gray and Bazemore, who are brothers, when he received a telephone call from his cousin, Lindsay, who was crying. She stated that someone had raped her. Gunter gave the telephone to Gray, who also knew Lindsay. After the conversation concluded, Gray went to his residence, returning some time later. Gunter surmised that Gray "had a gun. Everybody knew it." Although Gunter did not observe Gray with a gun upon his return, he knew "personally [Gray] went to go get a gun." Gunter, Gray and Bazemore took a taxi to Lindsay's residence. All of them walked from Lindsay's residence to a house more than ten blocks away. The group's plan was to "teach a lesson" to the "kid" to "show him . . . this [is] what you get for raping a female" by beating him up and "talking mad stuff to him."

Lindsay knocked repeatedly on the outside door of the house, and someone inside told the group to go away. Gray kicked the door and the group entered. Gunter kicked the glass door. A young male was standing near the glass door beyond which was a living room area. Gunter and Gray entered the living room, and Gray fired once at the male. The male fled deeper into the apartment, pursued by Bazemore and Lindsay, while Gunter and Gray waited in the living room. Gunter heard three more shots fired. Afterwards, Lindsay and Bazemore emerged, running to exit the apartment, Bazemore was holding a large silver gun. Gunter and Gray joined in the escape. They all exited the house; Lindsay and Gray ran in one direction, while Bazemore and Gunter ran toward Lindsay's residence. Bazemore informed Gunter that he thought he shot the male twice in the chest and once in the testicles, perhaps killing him.

Gunter was charged, by an indictment, with acting in concert with others to commit two counts of second-degree murder, first-degree manslaughter and two counts of first-degree

burglary.  He was also charged with second-degree conspiracy and fourth-degree conspiracy.

Gunter made a motion to suppress his statement to Detective DePaolis and the videotaped

statement.  Gunter asserted that, while awaiting arraignment on an unrelated possession of

marijuana charge, he was forcibly removed from custody and questioned by detectives.

According to Gunter, his seizure in Central Booking was done without probable cause, given that

no eyewitnesses placed him at the scene of the killing and no evidence connected him to the

crime scene.  Moreover, he asserted that his statements were involuntary because, at the time of

his seizure, he requested an attorney be provided to him.  Gunter also alleged that his statement

to the detective tainted the subsequent videotaped statement.  The court denied Gunter's

suppression motion.  It determined that Gunter waived his rights knowingly, rendering both his

statements voluntary.  The court noted that it did not need to decide whether Gunter was taken

into custody properly for the purpose of deciding the suppression motion because, at the time

Gunter was interviewed by Detective DePaolis, he was already in police custody on an unrelated

criminal matter and his prior counsel, in an omnibus motion, did not challenge the lawfulness of

the marijuana-related arrest.  Moreover, after Gunter offered his statements, the police had

probable cause to hold him for Levi's killing.

  A jury trial was held.  During summation, defense counsel argued that no allegation was

made that Gunter did the shooting, and that the two shooters were Bazemore and Gray.

Concerning what happened between Levi and Lindsay, counsel stated that Khari and Samuels

testified about a dispute between Levi and Lindsay, but neither could say what it had been about.

Counsel discussed what was said in the telephone call between Lindsay and Samuels and said

that a rape was "almost a non issue."  Counsel stated that the evidence suggested that "something

of a sexual nature" occurred between Levi and Lindsay.  He noted that this was "not very

important for our case," but it was important that Lindsay told Gunter that she had been raped, which is why he was involved.

In response, the prosecutor opened his summation by discussing the threats that Lindsay allegedly made toward Levi. The prosecutor stated that Levi was a "good kid," in 12th grade and he did not use drugs or alcohol. Defense counsel objected. The court stated that "the evidence concerning that matter is as to serology of what was found in his body at the time of the autopsy." The prosecutor added that Khari was in eighth grade and Samuels was "going to school to be a nurse, a dream that she achieved as of today. They were just a normal, everyday American family." The prosecutor stated that the "evidence shows" that Levi was "a 19 year old and he was starting to experiment to do things," and that Lindsay was a prostitute whom Levi did not want to pay for sex. Defense counsel objected that the prosecutor was arguing facts not in evidence. The court overruled the objection, stating: "He's making argument." The prosecutor also mentioned the ammunition that was found at Bazemore's apartment, stating that "it says something about the type of people that were's [sic] dealing with here. You go to a typical American family home," to which counsel objected. The court sustained the objection and stated that the detective "did not give any further testimony about the rest of that apartment or the interior, the presence or absence of any other things."

At the close of the prosecutor's summation, defense counsel moved for a mistrial, arguing that the prosecutor's summation deprived his client of a fair trial. He stated:

> The grounds for the mistrial are just the relentless inflammatory statements he's a good kid, and he might very well be, and his whole discussion about a good American family. I know he went to the point where I objected and I think the Court sustained my objection. But that he also consistently summed up on facts that were not in evidence. And I think it went beyond just argument, you know, saying that Miss Lindsay was a prostitute, making up the entire scenario of how they met and what the conversations were. He also, and I don't know, I haven't given this much

thought but - - or I haven't had any research, but Mr. Smith was a prosecutor in the Roy Gray trial that were statements that were diametrically opposed there about issues arising with respect to the hat.  I know your honor is anxious to charge this jury, but, you know, on several occasions he called my client a murderer, and he - - with this issue asking the jury to speculate, he many times when referring to the evidence, he said who's to say that Darren was the person?  You know, that's not the standard of proof here.  And I think for everything that was put on the record and other reasons I ask for mistrial.

The court denied the motion, stating, inter alia:

First, as far as what you contend to be inflammatory statements or arguments that go beyond the record, when you objected to any statement which I perceived to be in any way improper or arguing under the facts or arguing beyond what would be appropriate argument based upon the facts I ruled, and on several occasions, gave the jury a curative instruction.  I'm well satisfied that any curative instruction that I gave the jury is adequate and that nothing, even if I sustain an objection to anything that Mr. Smith said, nothing he had said was such that would interfere with the jury's following my curative instruction.  As far as arguing beyond the facts, he made certain inferences.  I'll instruct the jury on the process of drawing inferences and they cannot amount to speculation.  You made argument as to what was likely to have happened and what was possible to have happened between Miss Lindsay and Levi Bernard.  Mr. Smith just made argument to the possible scenario, but both sides argued to the jury that, in fact, whether Miss Lindsay did or did not have sexual relations with Levi Bernard, whether or not at some point she asked to stop, whether or not she was paid or not paid as expected frankly each of you argued was irrelevant.  I think that both of you folks, what was relevant was what she claimed to others may have set the tenure for what they then subsequently did, and that what was important is what Mr. Gunter said she claimed was done.  So I don't find that Mr. Smith argued any inferences beyond the record in terms of his vouching for Levi Bernard.  First of all, Mr. Bernard's character is not an issue here.  I mean, this is not a case of justification where the issue of the decedent is relevant, his reputation for violence or such.  When he made his argument, it went beyond the toxicology findings were as to at the time of his death.  I gave curative instruction, didn't simply sustain the objection, I gave a curative instruction. . . .  What Mr. Smith has argued is not contrary to the physical evidence which is before this jury.  So the defense motion for mistrial is denied.

Intentional murder and felony murder counts were submitted to the jury.  The court

instructed the jury about the affirmative defense to the felony murder count and repeated the

instruction that the jury could not use Levi's 911 call to conclude that Gunter shared Lindsay's

intent.  The jury acquitted Gunter of intentional murder and convicted him for second-degree murder.  He was sentenced to twenty years to life imprisonment.

The New York State Supreme Court, Appellate Division, First Department, affirmed the judgment of conviction and the sentence.  See People v. Gunter, 89 A.D.3d 461, 931 N.Y.S.2d 621 (App. Div. 1st Dep't 2011).  It found that the trial court denied properly Gunter's suppression motion because "the detective simply moved defendant from one room to another to speak with him, while he was still in lawful police custody," which "was, at most, a minimal additional intrusion on the defendant's lawful confinement," "did not implicate the Fourth Amendment, and it did not require defendant's consent or any particular level of suspicion."  Id. at 461, 931 N.Y.S.2d at 621 (quotation marks and citation omitted).  The Appellate Division determined that "[t]he verdict was not against the weight of the evidence," and the evidence "did not establish the affirmative defense to felony murder," since Gunter's "videotaped statement undermined his claim that he had no reasonable ground to believe that any of the other participants was armed with a deadly weapon."  Id. at 462, 931 N.Y.S.2d at 621-22.  With respect to Gunter's challenges to the prosecutor's summation, the Appellate Division found that "the only claim that he properly preserved by way of a timely and specific objection was his claim that a particular comment asserted facts not in evidence," but concluded:

> However, that remark constituted fair comment on the evidence and reasonable inferences to be drawn therefrom, made in response to defense arguments. Defendant's remaining challenges to the summation are unpreserved and we decline to review them in the interest of justice.  As an alternative holding, we find no basis for reversal.  We perceive no basis for reducing the sentence.
>
> Id. at 462, 931 N.Y.S.2d at 622.

The New York Court of Appeals denied leave to appeal.  See People v, Gunter, 18 N.Y.3d 883, 939 N.Y.S.2d 753 (2012).

9

***Petitioner's Contentions***

Gunter asserts here the same arguments he raised on direct appeal.  He contends that his seizure, while awaiting arraignment on a separate charge, was not reasonable because, although DePaolis testified that it was based on information he received from Lindsay, his testimony was incredible.  According to Gunter, when DePaolis first interviewed Lindsay, she did not name Gunter as one of the suspects, and the report about his second interview of Lindsay does not mention Gunter's name.  DePaolis admitted that he took no notes during the second interview with Lindsay and he prepared that report three days later, which suggests that he did not obtain any meaningful information from Lindsay in that interview.  Moreover, DePaolis provided inconsistent statements about the conversation with Lindsay, reporting at one hearing that the interview occurred before he seized Gunter, while reporting at another hearing that it occurred after the seizure, notwithstanding his admission that the prior testimony was a mistake.  Gunter contends that without Lindsay's alleged statement, the prosecution failed to meet its burden of establishing the basis for the seizure.  Furthermore, the fact that his interrogation started immediately after the seizure, with his initial statement made within one hour of the seizure and the videotaped statement less than one hour later, weigh against any attenuation of the statements from the unlawful conduct.

Gunter contends that the credible evidence established his affirmative defense, namely that: (a) he was not the person who shot Levi; (b) no evidence exists showing that he was armed; (c) he had no reasonable ground to know that other participants were armed; and (d) he had no reason to know that the other participants intended to kill or seriously injure Levi.  Gunter asserts that the prosecutor's misconduct during summation deprived him of a fair trial.  He maintains that the prosecutor made inflammatory comments, repeatedly, in an attempt to persuade the jury

10

to feel sympathy for the victim and the victim's family and to incite the jurors against him.  The

prosecutor engaged in a lengthy discussion about matters not in evidence and asked the jury to

conclude that Gunter intended to shoot the victim based on Lindsay's threat to the victim, even

though the jury was barred from drawing that conclusion.  Moreover, the prosecutor lowered his

burden of proof and "clouded the jury's analysis of the affirmative defense," when he asked the

jury to make speculative conclusions about whether Gunter was armed with a gun.  Gunter

contends his sentence should be reduced because of his minimal involvement, his expressed

remorse, and he was only eighteen at the time of the crime.

***Respondent's Contentions***

The respondent contends that Gunter's Fourth Amendment claim is barred, and Gunter

does not claim he was denied the opportunity to avail himself of the New York procedures for

litigating that claim, since he did litigate it.  The respondent asserts that no federal question is

presented by Gunter's claim that the verdict was against the weight of the evidence, and the

state-court decision was not contrary to or an unreasonable application of Jackson v. Virginia,

443 U.S. 307, 99 S. Ct. 2781 (1979).  According to the respondent, Gunter "tacitly acknowledges

. . . that the People proved all the elements of second-degree murder," but "only insists that the

verdict is undermined because he allegedly established all of the elements of the affirmative

defense."  However, the respondent contends, Gunter failed to prove that he did not solicit,

request or aid in the commission of the murder, because he confessed on videotape that he went

to the crime scene where he debated with others how to proceed to teach the "kid" a lesson by

beating him up.  Moreover, Gunter did not show he was unarmed and, given that the ballistic

investigators found bullets from at least two firearms and he was inside the apartment at the

moment of the shooting, the jury could infer that he was the gunman regardless of whether he

11

fired a fatal shot.  In light of Gunter's videotaped statement, he could not claim he did not know that Gray had a gun.

With respect to the prosecutorial misconduct claim, the respondent contends that Gunter raised, on direct appeal, "some of the arguments rejected by the court, and expanded on them with citations to unobjected-to-portions of the record in contending that the prosecutor allegedly inflamed the jury, commented outside of the four corners of the evidence, and shifted the burden of proof."  To the extent the state court found petitioner's improper summation claims unpreserved, they should be rejected here as procedurally forfeited.  Since the state court gave a curative jury instruction concerning the prosecutor's statements related to the victim's character, and defense counsel did not object further or request a mistrial on that ground, the curative instruction must be deemed to have corrected the error; thus no error was preserved for appeal. Moreover, Gunter alleged no cause or prejudice, or that a fundamental miscarriage of justice would result from the procedural default.  Alternatively, the state court ruled on the merits and its decision is entitled to deference and is not an unreasonable application of clearly established federal law.

With respect to the claim that the prosecutor inflamed the jury through statements intended to make the jury feel sympathy for the victim and the victim's family, the prosecutor was only responding to the defense theory of minimizing Gunter's culpability.  Furthermore, when the prosecutor referenced "facts that were not fully fleshed out during Detective DePaolis's testimony," the court sustained Gunter's objections and issued a curative instruction. The respondent contends that the state court also instructed the jury on drawing inferences, and any claim that the prosecutor argued outside the four corners of the evidence must be rejected, since the prosecutor was "merely articulating the people's theory."  Moreover, Gunter's claim

that the prosecutor diluted his burden of proof should be rejected because the People were not required to prove that Gunter was the shooter, only that he acted in concert with others to help perpetrate the crime.  According to the respondent, "[t]he prosecutor did not ask the jury to speculate on any issues," but "merely identified initial possibilities by some of the evidence that, in conjunction with the other evidence in the case led inescapably to Petitioner's guilt."  The respondent asserts that the sentencing claim is unexhausted and not cognizable on habeas corpus review, since the sentence is within the range prescribed by state law.

***Petitioner's Reply***

In reply, Gunter contends that no probable cause existed for taking him from the arraignment on a different matter, since DePaolis did not file "the I-Card or warrant" for his arrest.  He asserts that he was prejudiced by the state court allowing the prosecutor "to shift the burden" by "shifting intent to petitioner being the shooter."  According to Gunter, the prosecutor's comments outside the evidence were excessive and prejudicial.  He contends that his sentencing claim is exhausted because it was raised in the state court.

## DISCUSSION

***Legal Standard***

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim — (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

13

A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state-court decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520. On a petition for a writ of federal habeas corpus, "[t]he petitioner carries the burden of proof." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court adjudicates a constitutional claim on the merits when it: (a) disposes of the claim on substantive grounds; and (b) "reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). No articulation of the state court's reasoning for disposing of the claim is required, as long as a substantive ground is a basis for the disposition. See id.

AEDPA requires a petitioner to exhaust all remedies available in the state courts. See 28 U.S.C. § 2254(b)(1)(A). When a claim has not been presented to a state court for adjudication, a federal court reviewing a habeas corpus petition may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir.

2001).  A procedurally defaulted claim may be reviewed by a federal court only if the petitioner

shows "cause for the default and prejudice, or demonstrate[s] that failure to consider the claim

will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  Id.  To establish

cause for a procedural default, a petitioner must demonstrate that "some objective factor external

to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v.

Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986).  Federal habeas corpus review is

foreclosed where a state court relied on procedural default as an independent and adequate state

ground even if the state court ruled on the merits of a federal claim in the alternative.  See Harris

v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10 (1989).  Courts consider various

factors in determining the adequacy of the state procedural rule, including whether: (1) perfect

compliance with the state procedural rule would have changed the trial court's decision; (2) state

law indicates that compliance was required in the circumstances presented; and (3) petitioner

substantially complied with the procedural rule.  See Cotto v. Herbert, 331 F.3d 217, 240 (2d

Cir. 2003).  "An application for a writ of habeas corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

State."  28 U.S.C. § 2254(b)(2).

### *Fourth Amendment Claim*

Where a state has a mechanism for adjudicating a Fourth Amendment claim, habeas

corpus review of the claim is precluded.  See Stone v. Powell, 428 U.S. 465, 481-82, 96 S. Ct.

3037, 3046 (1976).  Federal courts can review the Fourth Amendment claim by state habeas

corpus petitioners only if the state: (a) "has provided no corrective procedures at all to redress

the alleged fourth amendment violations"; or (b) "has provided a corrective mechanism, but the

defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

New York Criminal Procedure Law § 71, et seq., provides a procedure for litigating Fourth Amendment claims, and the state court provided Gunter a full and fair opportunity to litigate his Fourth Amendment claim that no reasonable basis existed to seize him. Gunter does not allege that he was precluded from using New York's procedure due to an unconscionable breakdown in the underlying procedure. Accordingly, Gunter's Fourth Amendment claim is not cognizable on habeas corpus review.

### Verdict Is Against the Weight of the Evidence

"[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860 (1993). "In the Federal courts . . . it is well settled that upon habeas corpus the court will not weigh the evidence . . . ." Hyde v. Shine, 199 U.S. 62, 84, 25 S. Ct. 760, 764 (1905). Since federal habeas courts do not weigh the evidence, Gunter's claim that his verdict is against the weight of the evidence is not cognizable in this proceeding.

### Insufficient Evidence

"[A] federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt." Herrera, 506 U.S. at 401, 113 S. Ct. at 861. In determining whether a conviction is supported by sufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). "[P]*ro se* litigants generally are entitled to a liberal construction of their pleadings,

which should be read 'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citation omitted).

Interpreting Gunter's claim liberally, to the extent that he challenges the sufficiency of the evidence, he asserts only that the evidence established his affirmative defense.  To establish an affirmative defense to felony murder, Gunter had to show, by a preponderance of the evidence, see New York Penal Law § 25.00(2), that he: (1) "[d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof"; (b) "[w]as not armed with a deadly weapon"; (c) "[h]ad no reasonable ground to believe that any other participant was armed with such a weapon"; and (d) "[h]ad no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."  New York Penal Law § 125.25(3).  The state court's conclusion that Gunter failed to establish the affirmative defense to felony murder was not contrary to or an unreasonable application of Jackson, given Gunter's "videotaped statement," which "undermined his claim that he had no reasonable ground to believe that any of the other participants was armed with a deadly weapon."  Gunter, 89 A.D.3d at 462, 931 N.Y.S.2d at 621-22.  Gunter made no argument that the evidence was insufficient, apart from his claim that the evidence established his affirmative defense.  Since the state court's decision was neither contrary to nor an unreasonable application of the clearly established federal law, Gunter is not entitled to relief based on his insufficiency of the evidence claim.

***Prosecutor's Misconduct During Summation***

Federal habeas corpus review of Gunter's claims concerning the prosecutor's summation that the Appellate Division found unpreserved for appellate review is not foreclosed because the Appellate Division's reliance on procedural default was not an independent and adequate state

ground for rejecting the claim.  The ground for rejection relied on by the Appellate Division was not adequate because New York requires that a contemporaneous specific objection be made to preserve a claim concerning a summation comment and that further relief must be requested after an objection is sustained, see People v. Heide, 84 N.Y.2d 943, 944, 620 N.Y.S.2d 814, 816 (1994), which is exactly what Gunter did.  Gunter made specific objections during the prosecutor's summation and made a motion for a mistrial, which was based on the same grounds as those he raised in his direct appeal, namely, the prosecutor's (a) "Inflammatory Comments"; (b) "Comments Outside the Four Corners of the Evidence and Requests to Draw Improper Inference from the Evidence"; and (c) "Lowering Burden of Proof and Request to Speculate." Accordingly, Gunter is not foreclosed procedurally from raising, through the instant petition, his claims respecting the prosecutor's summation that he raised with the Appellate Division.

Moreover, the Appellate Division rejected as unpreserved Gunter's challenges to the prosecutor's summation, except "the only claim that he properly preserved by way of a timely and specific objection," which "was his claim that a particular comment asserted facts not in evidence."  However, the Appellate Division did not identify what "particular comment" it was considering, making it impossible to ascertain whether its determination was an unreasonable application of, or contrary to, clearly established federal law.  Thus, the Court will address anew the merits of Gunter's claims respecting prosecutorial misconduct during summation.

To obtain relief on a claim of prosecutorial misconduct during summation, a petitioner must show that the prosecutor's comments constituted, not "ordinary trial error," but egregious misconduct amounting to a denial of constitutional due process.  Donnelly v. DeChristoforo, 416 U.S. 637, 647-48, 94 S. Ct. 1868, 1873 (1974).  Although the prosecutor's statements in summation included improper comments, those comments do not constitute egregious

misconduct amounting to a denial of constitutional due process, especially in light of the trial court's curative instructions to the jury.  See People v. Baker, 14 N.Y.3d 266, 274, 899 N.Y.S.2d 733, 738 (2010) ("Jurors are presumed to follow the legal instructions they are given.").  Therefore, Gunter cannot obtain relief based on his claim of prosecutorial misconduct during summation.

### *Excessive Sentence*

"No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).  Gunter was convicted for second-degree murder, a class A-1 felony, see New York Penal Law § 125.25, for which the mandatory minimum sentence is at least 15 and at most 25 years imprisonment and the maximum sentence is life imprisonment, see Chart V, New York Sentence & Related Law Charts.  Gunter's sentence of 20 years imprisonment is within the range prescribed by state law.  Accordingly, Gunter cannot obtain habeas corpus relief based on his excessive sentence claim.

## RECOMMENDATION

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Valerie E. Caproni, 40 Centre Street, Room 240, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007.  Any

requests for an extension of time for filing objections must be directed to Judge Caproni.

***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See <u>Thomas v. Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Cephas v. Nash</u>, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
     March 5, 2014

Respectfully submitted,

*Kevin Grathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:

Darren Gunter